UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SONEET R. KAPILA

        Plaintiff,

v.                                                                                    CASE NO: 8:19-cv-1800-SDM-TGW

JONATHAN LEWIS

        Defendant.

_____/

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Soneet R. Kapila, in his capacity as the Assignee ("**Plaintiff**") of Laser Spine Institute, LLC ("**LSI**") and each of its affiliated entities (collectively, the "**Companies**") respectfully submits this memorandum of law in opposition to Jonathan Lewis' ("**Defendant**" or **"Lewis"**) motion to dismiss [Doc. No. 21] (the "**Motion**") Plaintiff's *Amended Complaint for Damages and Demand for Jury Trial* [Doc. No. 20] (the "**Complaint**").

### FACTUAL BACKGROUND

**A.**    **With Complete Control on its Operations, the Board of Managers Caused the LSI Enterprise to Fail Through Conflicted Transactions**

Florida-formed LSI was the parent company of a national, spine-focused orthopedic chain that performed about 100,000 procedures per year, and employed over 600 employees. (Doc. No. 20 ¶¶ 12-16).  Soon after the adverse Original Judgment in the Bailey Litigation in 2013 and the Dividend Loan and Dividend Distribution, the Board of Managers initiated a corporate restructuring of the Companies designed to frustrate creditors and insulate themselves from liability. *See id.* ¶¶ 23-27. Despite being confronted by a dire need for liquidity and significant losses in the Bailey Litigation, the Board of Managers opted to loot the value of LSI, and the rest of the Companies through a loan to pay the Dividend Distributions. *Id.* ¶¶ 36-47. Through these

1

ill-fated and self-interested transactions, the Board of Managers collateralized substantially all of the Companies' assets, and transferred $110,473,942 in Dividend Distributions from LSI Management (a Florida company) to themselves. The Board of Managers used the Dividend Loan and Dividend Distributions to line their own pockets (or, to borrow a phrase from the Board of Managers "take money off the table"), thereby causing the Companies' insolvency instead of addressing the Companies' impending financial crisis. *See, e.g.*, *Id.* ¶¶ 48-51.

B.    **Lewis and Other Members of the Board of Managers Seek to Cover-Up the Board's Wrongdoing with More Acts of Wrongdoing**

While Lewis was a member of Holdco's Board, the Companies' financial condition continued to deteriorate as a result of the Dividend Loan and Dividend Distributions.  Shortly thereafter, the Companies defaulted under the Dividend Loan and missed lease payments relating to its Florida headquarters. *Id.* ¶¶ 48-51. Despite the Companies' worsening financial condition, the Board of Managers continued to act in their own self-interests to the detriment of the Companies. *Id.* ¶¶ 59-76. **First**, the Defendant and Board of Managers failed to pursue known claims to recover the Dividend Distributions from the recipients. *Id.* ¶¶ 59-64. Their willful failure to pursue known claims to recover the Dividend Distributions was no coincidence since the hopelessly conflicted Board of Managers were the direct or indirect beneficiaries of the Dividend Distributions.

**Second**, the Defendant also took part in a multifaceted cover-up whereby he and other members of the Board of Managers attempted to insulate themselves from liability by, *inter alia*: (A) entering into the November 18, 2016 Release Agreement with the Lender with respect to claims arising out of or relating to the Dividend Distributions, and (B) undertaking the Cover-Up Transfers which, by design, attempted to exonerate and release the Defendant, and other members of the Board of Managers, without consideration for any liability relating to "all claims or causes

2

of action for any breach of fiduciary duty to Holdco, including prior breaches of fiduciary duty in connection with the Dividend Loan/Dividend Distribution and conflicts of interest. *Id.* ¶¶ 65-76. In this way, the purpose behind the Release Agreement and changes to Holdco's operating agreement constituted an abuse of their control over LSI, Holdco, and the Companies to absolve themselves from liability for their misconduct. *See Id.* ¶¶ 75-76.

**C.      Plaintiff's Claims Against Lewis**

Lewis's acts and omissions during his tenure violated the fiduciary duties he owed to LSI, LSI Management, and the other Companies. *See generally Id.* ¶¶ 84-91. Lewis exerted, and ultimately abused his control over those entities' assets, and operations to enter into self-interested transactions that were deleterious to the interests of those entities. *See Id.* The claims that Plaintiff brings against Lewis arise out of and relate to the breaches of his fiduciary duties. *Id.* ¶ 87.

The Wrongful Acts that constituted breaches of fiduciary duties included, among others,: (A) failing to (i) implement or follow, or to otherwise cause the implementation and following of, adequate safeguards or controls in regard to financial reporting and material business, operational, and regulatory functions, (ii) prevent or otherwise permitting the Companies to engage in corporate waste, (iii) fully or adequately inform himself in regard to material decisions affecting the Companies, and (iv) failing to cover their self-insurance program obligations during the Companies' insolvency (the "**Lewis Operational Failures**") (*Id.* ¶ 132(i), (ii), (vi), (vii), (x), (xi)); (B) while the Companies were insolvent, (i) failing to undertake sufficient measures to prevent and/or recover preferential or fraudulent transfers (such as, for example, the Cover-Up Transfers), that resulted in a loss of assets, (ii) allowing the Companies' assets and enterprise value to continue to decrease in value, and (iii) failing to implement insolvency proceedings ("**Failures During Insolvency**") (*Id.* ¶ 132(iii), (iv), (v), (viii); (C) failing to pursue claims and causes of action to

recover the Dividend Distributions which constituted both fraudulent transfers and violations of applicable law at the time (the "**Failure to Bring Claims**"), and (D) concocting a scheme to insulate himself and others from liability through the Cover-Up Transfers (*See id.* ¶ 132(xii), (xiii). Counts V to VII are claims for actual or constructive fraudulent transfers pertaining to the Cover-Up Transfers, and Count VIII is a claim for declaratory relief concerning those very same Cover-Up Transfers.

## ARGUMENT

**A.     Count I States a Claim for Breach of Fiduciary Duty under Florida Law.**

Section I of the Motion (Doc. No. 21, at 6-8) must fail. **First**, whether under Florida law or Delaware law (which Lewis urges that the Court apply), where the manager of an LLC is not a natural person but instead an entity (*i.e.*, Holdco), the natural-person controllers of the manager-entity (*i.e.*, Lewis and other members of the Board of Managers) owe fiduciary duties directly to the subsidiary LLC (i.e., LSI Borrowers). Following the seminal decision of *In re USACafes, L.P. Litigation,* 600 A.2d 43 (Del. Ch. 1991),[1] courts have repeatedly imposed fiduciary duties on the individual persons who ultimately control a corporation, partnership, or limited liability company, including those individual persons who ultimately control the entities' fiduciaries, such as its managers, board members, general partners, or controlling stockholders. *Glidepath Ltd. v. Beumer Corp.,* 2019 WL 855660, at *18 (Del. Ch. Feb. 21, 2019); *see Beaubien v. Cambridge Consol.*, 652 So. 2d 936, 938-39 (Fla. 5th DCA 1995).[2] Focusing on *control* as the defining element under

---

[1] In *USACafes*, the court held that the individuals who controlled the general partner of a limited partnership (either directly or indirectly) owed a fiduciary duty of loyalty to the limited partnership and its limited partners. 600 A.2d 43, 47-48 (Del. Ch. 1991). . The *USACafes* court noted the equitable tradition of looking to the substance of where control lay, observing that "[w]hen control over corporate property was recognized to be in the hands of the shareholders who controlled the enterprise, the fiduciary duty was found to extend to such persons as well." *Id.*

[2] *Accord Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, CIV.A. 5502-CS, 2011 WL 3505355, at *30 (Del. Ch. Aug. 8, 2011) (applying USACafes at two levels, first to the LLC that acted as general partner for limited partnership, and second to the managing member of LLC); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,

4

*USACafes*, courts apply this principle to hold liable the individuals that ultimately exercise control, directly or indirectly, over an entity.[3] *USACafes*, *Glidepath, Beaubin*, *Wallace,* and *Bay Center* expressly contravene Lewis's argument that he owed fiduciary duties only to Holdco and not the subsidiary LSI Borrowers. Under the above cases, Lewis in fact owed fiduciary duties to the LSI Borrowers as a member of a board of a parent company (*i.e.*, Holdco) that in turn exercised, exerted, and ultimately abused its control over the assets of the LSI Borrowers. The Complaint is replete with allegations that Lewis and the other members of the Board of Managers completely managed, conducted, and controlled the affairs and assets of the LSI Borrowers (and other Companies).

**Second**, Section I is predicated on an unfaithful application of applicable law by Lewis where he blatantly overlooks *USACafes* and its progeny, and asks the Court to rely on *Trenwick* and *Molinos Valle*[4] to support his argument that Plaintiff cannot assert claims on behalf of the Companies against Lewis individually without piercing Holdco's veil. The *Trenwick* decision however involved parent and subsidiary *corporations* and not *limited liability companies* like *all* of the LSI Borrowers.Lewis's reliance on *Molinos Vallue* is even less availing as that court did not address whether an ultimate nucleus of human managers owed duties to the LLCs they controlled; rather, the Eleventh Circuit confronted whether the district court properly granted a ***motion for judgment as a matter of law*** under Rule 50 as to plaintiff's statutory worthless check claim against

---

817 A.2d 160, 173 (Del. 2002) (holding that directors and controlling stockholders of general partner that controlled limited partnership owed fiduciary duties to limited partnership).

[3] *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180-82 (Del. Ch. 1999) ("Officers, affiliates and parents of a general partner, may owe fiduciary duties [under *USACafes*] if those [officers, affiliates, and parents] control the partnership's property." (emphasis added)); *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. CIV. A. 3658-VCS. 2009 WL 1124451, at *9 (Del. Ch. Apr. 20, 2009) (explaining that "*USACafes* does not apply to all affiliates in all circumstances" but instead requires that "the affiliate must exert control over the assets of that entity" (emphasis added)).

[4] *Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006); *Molinos Valle Del Cibao. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011).

officers of the corporation that signed the allegedly worthless check. These distinctions are important: under Delaware and Florida law, *USACafes* and its progeny extends to limited partnerships (*USACafes*), general partnerships (*Gotham Partners*), limited liability companies (*Bay Center, Paige*, *Glidepath*, *inter alia*), and trusts (*Beaubien*), but not corporations. That is because a corporation is managed by its board of directors, which must be filled with natural persons. *E.g.*, Fla. Stat. § 617.0802; Del. Code Ann. tit. 8, § 141(b). Whereas, with a limited partnership or a limited liability company, the affairs of such entities may be managed by a corporate entity. *USACafes* and its progeny are motivated by the desire to break through the corporate fiction and attach liability—in an appropriate circumstance—to the actual individuals, the natural persons, responsible for wrongdoing. *USACafes*, 600 A.2d at 47-48; *Bay Center*, 2009 WL 1124451, at *9-10; *Beaubien*, 652 So.2d at 938-39

In Section I(B) of his Motion, Lewis moves to dismiss Count I, arguing that the Complaint does not adequately allege "breach of any fiduciary duties, or that such breach caused damages." (Motion, Doc. No. 21, at 8). In Lewis' view of the world, there is "nothing improper about taking out a loan" like the Dividend Loan, and any assertion that taking out a loan rendered the LSI Borrowers insolvent (i.e., caused damages) is belied by the fact that the loan was offset by an equally valuable asset: the loan proceeds. Thus, according to Lewis there is "no breach, causation, or damages." *Id.* This argument is meritless. **First**, Lewis argues that the *fact intensive* considerations of breach, causation, or damages require dismissal of the Complaint. Typically, these considerations do not warrant dismissal of a Complaint. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Copenhaver*, 8:13-CV-2037-T-33TBM, 2014 WL 12621202, at *8 (M.D. Fla. May 10, 2014) (denying motion to dismiss claims for breach of fiduciary duty and gross negligence, holding that disputed facts underlying those claims rendered the motion inappropriate); *Laird v. Aetna Life Ins.*

6

*Co.*, 263 F. Supp. 3d 1231, 1245 (M.D. Ala. 2017) (concluding that defendant improperly asked the court to delve into, at the motion to dismiss stage, "healthy factual dispute" as to whether and to what extent defendant owed plaintiffs fiduciary duties); *Paine Webber v. Centocor*, Nos. 14405-NC, 14667-NC, 1997 WL 30216, at *3 (Del. Ch. Jan. 15, 1997) ("As an initial matter it should be pointed out that questions regarding fiduciary duty necessarily involve examination of factual circumstances better left to the close examination of trial than resolution on one or the other party's arguments as to their import.").

**Second**, Lewis' argument completely misses the mark.  The basis for his breach of fiduciary duty is not simply that the LSI Borrowers took out the Dividend Loan.  Rather, it is the immediate and contemporaneous distribution of the proceeds of the Dividend Loan (*i.e.* the Dividend Distributions) to or for the benefit of the conflicted members of Holdco Board, among others, that constitutes the basis for such breach of fiduciary duty.  Lewis simply ignores the facts and allegations of the Complaint in characterizing the Dividend Loan as ordinary and benefitting the LSI Borrowers.  The Complaint is clear:  Lewis and the Board of Managers opted to take out a massive loan to line their own pockets, collateralizing substantially all of the Companies' assets to do so and leaving those Companies insolvent in the process. Specifically, the Dividend Loan was the vehicle through which Lewis and his colleagues (who exercised complete, unfettered control over the affairs of the LSI Borrowers) could, and ultimately would, enrich themselves (i.e., through the Dividend Distributions) by "tak[ing] money off the table" to the tune of ***$110,000,000.00***.[5] Lewis and his colleagues on the Board of Managers caused the LSI Borrowers to enter into the Dividend Loan and make the Dividend Distribution despite the "dire need of immediate liquidity," the pervasive financial issues facing the LSI Borrowers (who did not enjoy

---

[5] *See, e.g.*, Doc. No. 20 ¶¶ 3, 4, 26-32, 40, 44-50, 102.

the benefit of the loan proceeds) and the Companies, and knowing that the Dividend Loan could not be repaid. *Id.*[6] In fact, the Dividend Loan and corresponding Dividend Distribution caused the LSI Borrowers' insolvency and, the LSI Borrowers, as a result, were immediately unable to meet their obligations under the Dividend Loan.[7] Lewis and his Board of Managers colleagues did not cause the Companies to use those funds in any meaningful way, but instead immediately siphoned off those Dividend Loan proceeds, through the Dividend Distributions, to themselves or for their benefit.[8] As a direct and proximate result of these blatant acts of self-dealing, the Complaint goes on to allege that the Companies "suffered substantial damages" in various ways.[9] In sum, these allegations are *clearly* sufficient to state a cause of action for breach of fiduciary duty under Florida law.

**B.     Plaintiff Seeks to Hold Lewis Accountable for Acts and Omissions Within *Any* Applicable Statute of Limitations**

In his Motion, Lewis only challenges Count II of the Amended Complaint as being barred by Delaware's statute of limitations. A "Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate *only if it is apparent from the face of the complaint that the claim is time-barred*" because "[a] statute of limitations bar is an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quotation marks omitted) (emphasis added); *Foster v. Savannah Commc'n*, 140 Fed. App'x 905, 907 (11th Cir. 2005). "At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Witter*

---

[6] *See, e.g.*, *id.* ¶¶ 38, 42-45.
[7] *See. e.g.*, *id.* ¶¶ 4(i)-(iii), 48-49, 79-81; *id.* ¶¶ 48-58.
[8] *See, e.g.*, Doc. No. 20 ¶¶ 1, 40, 45-47, 102.
[9] *See id.* ¶¶ 92-93; 104.

*Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005).

In Delaware, the doctrine of equitable tolling tolls the statute of limitations for claims of wrongful self-dealing where a plaintiff reasonably relies on the competence and good faith of a fiduciary such as a director, even in the absence of actual fraudulent concealment. *Microsoft Corp. v. Amphus, Inc.*, CV 8092-VCP, 2013 WL 5899003, at *17 (Del. Ch. Oct. 31, 2013) (citing *Weiss v. Swanson,* 948 A.2d 433, 451 (Del. Ch. 2008)).  The Complaint here alleges that Lewis stood in a fiduciary relationship to Holdco as a member of its Board of Managers, and as noted exhaustively *supra*, repeatedly abused that fiduciary relationship of trust through self-dealing and self-interested transactions.

In addition, where a plaintiff, alleges that a defendant owes fiduciary duties and that he or she breached those duties through self-dealing, then the limitations period is tolled even absent allegations of affirmative acts of concealment. *See, e.g.*, *Amphus, Inc.*, 2013 WL 5899003, at *17; *Litman v. Prudential-Bache Properties, Inc.*, CIV.A. 12137, 1994 WL 30529, at *3 (Del. Ch. Jan. 14, 1994), *aff'd,* 642 A.2d 837 (Del. 1994). Here, the Complaint makes clear that neither the Plaintiff, as assignee, nor any disinterested member of Holdco could have been on inquiry notice due to the pervasive abuse of the control and dominion that Lewis and other members of the Board of Managers possessed over the operations of Holdco (and the other Companies), particularly where Lewis and other members of the Board of managers used this control and dominion to actively concealed, and attempted to absolve themselves from, their liability to Holdco and the Companies at large.

Further supporting this contention is the fact that the Plaintiff has alleged that Lewis *and* the other members of the Board of Managers of Holdco breached their fiduciary duties. When each and every fiduciary has breached their fiduciary duties, no innocent party can be presumed to have

9

been on inquiry notice. That is because, under Delaware law, a limited liability company will not be barred from bringing a claim against its controlling fiduciaries simply because those fiduciaries succeeded at keeping the company in the dark throughout the imitations period:

> Under the doctrine of inherently unknowable injuries, the running of the statute of limitations is tolled while the discovery of the existence of a cause of action is a ***practical impossibility***. For the limitations period to be tolled under this doctrine, there must have been no observable or objective factors to put a party on notice of an injury, and plaintiffs must show that they were blamelessly ignorant of the act or omission and the injury. Often, plaintiffs can establish "***blameless ignorance***" by showing justifiable reliance on a professional or expert whom they have no ostensible reason to suspect of deception. This doctrine tolls the limitations period until a plaintiff had "reason to know" that a wrong has been committed.

*In re Dean Witter P'ship Litig.,* CIV. A. 14816, 1998 WL 442456, at \*5 (Del. Ch. July 17, 1998). As noted *supra*, the Complaint clearly provides that Holdco (and the Companies), as corporate entities, did not have any reason to know that Lewis and the other members of the Board of Managers breached their fiduciary duties to Holdco and the Companies until Plaintiff was granted control of the Companies for the purposes of the assignment cases and, as such, Plaintiff's claims, including Count II, were tolled during that time. Here, the Complaint alleges sufficient facts to invoke equitable tolling and dismissal is inappropriate.

**C.      Count III States a Claim for Breach of Fiduciary Duty**

Under both Delaware and Florida law, the elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause. *Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1307 (S.D. Fla. 2013) (citation omitted); *Cf. Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1178 (Del. Ch. 1999). Further, fiduciaries breach their duty of loyalty by acting against corporate interests or otherwise engaging in self-dealing. *See, e.g.*, *U.S. v. De La Mata*, 266 F.3d 1275, 1293-94 (11th Cir. 2001) (providing that the duty of loyalty "obligates officers and

directors to avoid fraud, bad faith, usurpation of corporate opportunities, and self-dealing."); *Guttman v. Huang*, 823 A.2d 492, 506 n.34 (Del. Ch. 2003) ("A director cannot act loyally towards the corporation unless she acts in the good faith belief that her actions are in the corporation's best interest."). Section III of the Motion argues that Count III must fail because the Second Restated Holdco LLC Agreement is consistent with Delaware law "permitting the ***prospective*** eliminations of fiduciary duties" and it did not release claims of Holdco relating to prior breaches of fiduciary duties." (Doc. No. 21, at 11-14).  Lewis's argument fails for several reasons.

**First**, Lewis ignores a fundamental predicate of Plaintiff's Count III: his willful and deliberate failure to take appropriate action to timely pursue known claims and causes of action that existed in favor of Holdco prior to the execution of the Second Restated Holdco LLC Agreement, which alone is sufficient to state a claim. *See, e.g.*, (Doc. No. 20 ¶ 118-121). Count III alleges that Lewis owed Holdco fiduciary duties of loyalty and care, and to conduct himself consistently with the implied covenant of good faith and fair dealing. *Id.* ¶ 115. Count III then alleges that Lewis breached his fiduciary duties to Holdco because by early November 2016 (which was prior to the Second Restated Holdco LLC Agreement), Lewis was aware that certain claims existed in favor of Holdco and certain of the Companies to recover the Dividend Distributions paid when those Companies were insolvent. *Id.* ¶ 118-121. Notwithstanding his knowledge of these valuable claims, Lewis failed to pursue those claims, for which Lewis knew or should have known were viable, and hold members of the hopelessly conflicted Board of Managers accountable for the improper transactions involved in the Dividend Loan and the Dividend Distributions. *Id.* at 123. The Motion does not *address* this claim which more than plausibly states a claim for breach of fiduciary duty.

**Second**, beyond ignoring this claim, Lewis myopically focuses only on the allegations in Count I concerning Lewis's attempt to insulate himself and other members of the Board of Managers from known liability through the Cover-Up Transfers. Lewis argues that Count III must fail because Delaware law permits "prospective eliminations of fiduciary duties" under Delaware law and the Second Restated Holdco LLC Agreement did not release claims for prior breaches of fiduciary duties. *See* Doc. No. 21, at 11-14. Once again, Lewis misses the mark. Lewis's syllogism—if Delaware law sanctions "prospective eliminations of fiduciary duties," then provisions "adopting them did not breach Defendant's fiduciary duties"—is a strawman divorced from the acts and omissions for which Count I seeks an appropriate remedy.

Count III involves a multifaceted cover-up that implicates multiple breaches of Lewis's fiduciary duties. The first breach is Lewis's (and the other members of the Board of Managers') willful and deliberate failure to pursue known, valuable causes of action against his fellow members of the Board of Managers. As noted immediately *supra*, Section III of the Motion completely ignores this claim. The second breach is comprised of the wholesale effort to insulate himself and other members of the Board of Managers from liability through the Release Agreement, modifications to the Second Restated Holdco LLC Agreement, and the Cover-Up Transfers. *E.g.*, (Doc. No. 20 ¶¶ 65-76). Thus, even though that Delaware law may permit limited liability companies to eliminate fiduciary duties "through applicable LLC or other operating agreements," Count III alleges that Lewis abused Delaware law by, among other things, obtaining *ex post facto* releases from Holdco and its members of *known* and *valuable* claims and causes of action for any breach of express or implied duty (including any breach of fiduciary duty). (Doc. No. 20 ¶¶ 65-76).

**Finally**, Lewis again misses the mark by arguing that the Second Restated Holdco LLC Agreement only operated as a "prospective elimination of fiduciary duties" because § 3.6(d) of that agreement only released claims by "each member" against Holdco. (Doc. No. 21 at 13). The Second Restated Holdco LLC Agreement however expressly *restated*, *replaced*, and *superseded* the Restated Holdco LLC Agreement in order to retroactively eliminate the fiduciary duties owed by the Board of Managers at the time of the Dividend Loan and Dividend Distributions. *See* Doc. No. 20 ¶¶ 73-76. That intention to restate, replace, and supersede is apparent from the face of the Second Restated Holdco LLC Agreement itself:

> 10.11   Amended and Restated Agreement.   This Agreement amends and restates the [Restated Holdco] LLC Agreement in its entirety and constitutes the entire agreement among the parties with respect to the subject matter hereof and **supersedes all prior agreements or understandings, whether written or oral, with respect thereto**.[10]

Second Restated Holdco LLC Agreement, ¶ 10.11 (the "**Supersession Clause**").

Before November 2016, the Restated Holdco LLC Agreement expressly provided that the "Liability of Members of the Board of Managers" provision did not "affect the liability or duties" of the Defendant and other members of the Holdco Board of Managers.  (Doc. No. 20 ¶¶ 69-70). Apparently recognizing their exposure to Holdco and the other Companies under the terms of the Restated Holdco LLC Agreement, Lewis and other members of the Board of Managers amended and restated their operating agreement through the Second Restated Holdco LLC Agreement, which included the Revised Liability and Release Provision. *Id.* ¶¶ 73-74. Whereas the Restated Holdco LLC Agreement provided that it would *not* affect the liability or duties of Lewis, the Revised Liability and Release Provision of the Second Restated Holdco LLC Agreement purports

---

[10] For the Court's ease of reference, Plaintiff attaches the Second Restated Holdco LLC Agreement as Exhibit A.

to retroactively grant, without any consideration, waivers for all claims or causes of action for any breach of fiduciary duty to Holdco. *Id.* ¶ 74.

In other words, Lewis gives only one slice of the broader picture. While Lewis is correct to say that the Second Restated LLC Agreement does "release[] claims by 'each member . . . against the present and former Members,'" (Doc. No. 21 at 13). Lewis's argument that "nothing in the Second [Restated Holdco] LLC Agreement released claims of Holdco against Members or managers for breaches of fiduciary duty" is false. In addition to releasing claims that each member had against present and former members as Lewis states, the Complaint also makes clear that Lewis and other members of the Board of Managers entered into the Second Restated Holdco LLC Agreement to, and in fact did (A) remove language from the prior Restated Holdco LLC Agreement providing that its "Liability of Members of the Board of Managers" provision would not "affect the liability or duties of" Lewis and other members of the Board of Managers; (B) add language stating that "all fiduciary duties of any Manager to the Company . . . are hereby **eliminated**" to the "**maximum extent permitted by applicable law**"[11]; (C) remove any duty by Lewis and others to "give any consideration to any interest of or factors affecting" Holdco[12]; and, (D) obtain *ex post facto* ratification, approval, and consent to all actions taken prior to November 2016. (Doc. No. 20 ¶¶ 73-76).

**D.    Count IV States a Claim for Breach of Fiduciary Duty under Florida law**

In Section IV of the Motion, Lewis makes several meritless arguments that Count IV of the Complaint does not state a claim for breach of fiduciary duty. Citing to inapposite case law concerning fiduciary duties owed by parent corporations to subsidiary companies, Lewis first argues that Lewis "as a member of Holdco, a Delaware LLC, only owed fiduciary duties to Holdco,

---

[11] Second Restated Holdco LLC Agreement, § 3.6(d).
[12] *Id.* § 3.6(c).

14

not any of the Non-Holdco Companies." This argument does not accurately reflect applicable law. *See supra* section A. Lewis next argues that Count IV should be dismissed as to the Companies that are not organized under Florida law because the "internal affairs" of the Companies are governed by the laws of the state in which each such company is organized, and Lewis "does not owe fiduciary duties to these entities under Florida law." (Doc. No. 21 at 12-13).  Notably, Lewis fails to cite any case to support his contention: that fiduciary duties against foreign limited liability companies evaporate if they are brought under Florida law.  Application of Florida's choice-of-law principles, however, does not operate to bar claims for breach of fiduciary duty against foreign limited liability companies; rather as the case on which Lewis himself relies provides, courts will apply the law of the state in which the company is organized "in addressing fiduciary duties." *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1347 (M.D. Fla. 2014).[13]

Section IV of the Motion culminates with seven pages of pleading arguments purporting to justify dismissal of Count IV. For the reasons stated immediately below, each of Lewis's arguments fail. **First**, Lewis essentially argues that the Complaint lacks specificity under Rule 8 of the Federal Rule of Civil Procedure because it does not contain entity-specific facts supporting the allegations contained in Count II. (Doc. No. 21 at 15-16). Here, Count IV states a claim for breach of fiduciary duty as to each of the Companies where the Complaint alleges unequivocally that (1) as a member of Holdco's Board of Managers, which was the manager-entity for *each* of the Companies, Lewis completely managed, conducted, and controlled the affairs and assets of *each* of the Companies;[14] (2) the Companies, as related limited liability companies controlled by Holdco and its Board of Managers, collectively constituted a national, spine-focused business

---

[13] In fact, the *Aquent* court actually *denied* the defendant's motion to dismiss plaintiff's breach of fiduciary duty claim pertaining to a Delaware limited liability company, holding that plaintiff sufficiently alleged that defendant owed a fiduciary duty for purposes of a motion to dismiss. *Id.* at 1248.

[14] Doc. No. 20 ¶ 11; *id.* ¶¶ 26-31; *id.* ¶¶ 30-34; *id.* ¶¶ 87-89; *id.* ¶¶ 97 and 129.

15

operation[15]; (3) by virtue of his being a member of the Board of Managers, Lewis was a fiduciary to all the Companies at all material times to the Complaint and, therefore, owed fiduciary duties of loyalty and care to the Companies[16]; (4) Lewis breached his fiduciary duties to *each* of the Companies by virtue of, *inter alia*, the Lewis Operational Failures and the Failures During Insolvency, which, as highlighted extensively *supra*, are amply supported by the allegations contained in the Complaint; and (5) the Companies suffered damages as a result. (Doc. No. 20 ¶¶92-93). In short, Count IV and the allegations it incorporates far exceed the applicable "exceedingly low notice pleading standard." *See GO Traders, S.A. v. Intertex Miami, LLC*, 1:18-CV-21372-KMM, 2018 WL 7287151, at *4 (S.D. Fla. Oct. 24, 2018). Thus, directly contrary to Lewis's argument, Plaintiff has "plead facts supporting *each* element of his claim for each specific entity, including the existence of fiduciary duties to the entity, breach of those fiduciary duties, and that such breach caused each entity damages." (Doc. No. 21 at 15-16).

**Second**, Lewis's argument that Count II fails to allege "facts supporting the conclusory recitation of the elements of" the breach of fiduciary duty claim contained therein cannot be squared with the *actual*, *exhaustive* allegations of wrongdoing set forth in the Complaint, which, being incorporated into Count II, expressly support the "ways in which Defendant breached his fiduciary duties" to the Companies. Specifically, the Lewis Operational Failures, the Failures During Insolvency, the Failure to Bring Claims, and the Cover-Up Transactions are examples of the "Wrongful Acts" set forth in Count II that are amply supported by allegations in the Complaint.

**Third**, Lewis then attacks Paragraphs 131 and 132, arguing that those Paragraphs (together with their subparts) constitute "conclusory recitation[s] of the elements of this claim," (Doc. No. 21 at 16) and proceeds to cite to numerous examples as to why he believes those Paragraphs are

---

[15] Doc. No. 20 ¶¶ 14-16; *id.* ¶¶ 26-34.
[16] *E.g.*, Doc. No. 20 ¶¶ 85-88; *id.* ¶¶ 97-98,129;

16

"conclusory" or "bare conclusions" of specific claims.  Lewis first targets Count IV's allegations concerning corporate waste, (Doc. No. 20 ¶ 132) arguing that "Plaintiff's bare conclusion that Defendant allowed corporate waste . . . without more, falls well short of the substantive allegations necessary to state such a claim." (Doc. No. 21, at 16-17).  This argument fails. Lewis here conflates stating a cause of action for corporate waste—which the Complaint does not do—with allegations to support Count II's claim for breach of fiduciary duty against Lewis. Even so, the very cases cited by Lewis, when juxtaposed against the allegations of the Complaint actually *support* the viability of Count II because the Complaint on its face alleges that the "transaction[s] in question"—namely, the Failure to Bring Claims and the Cover-Up Transfers—served no purpose and were "completely bereft of consideration." *Criden v. Steinberg*, No. 17082, 2000 WL 354390, *3-4 (Del. Ch. Mar. 23, 2000).[17]

Citing to a recent decision in *In re Our Alchemy, LLC,*[18] Lewis next argues that "Plaintiff's assertion that Defendant breached his fiduciary duty by failing to initiate insolvency proceedings . . . has been repeatedly rejected by Delaware courts." (Doc. No. 21, at 17). But, *In re Our Alchemy* permitted a bankruptcy trustee to pursue a breach of fiduciary duty claim that was, as here, predicated on allegations that management caused the struggling company to undertake transactions for which the company would not receive a benefit, and that such management stripped the company of working capital to benefit a member of management.[19] Indeed, as noted exhaustively *supra*, the well-pleaded allegations of the Complaint—including the Lewis Operational Failures, the Failures During Insolvency, the Failure to Bring Claims, and the Cover-

---

[17] F. Here, in stark contrast, the Complaint alleges, and Count IV incorporates *numerous* allegations that, for example, the Cover-Up Transfers were granted by Lewis without any consideration whatsoever (Doc. No. 20 ¶ 74) and that Lewis willfully failed to pursue known, valuable claims and/or causes of action to recover in order to benefit his fellow colleagues on the Board of Managers (Doc. No. 20 ¶¶ 59-64).

[18] Adv. No. 18-50633 (KG), 2019 WL 4447541, at *8 (Bankr. D. Del. Sept. 16, 2019).

[19] *See In re Our Alchemy, LLC*, 16-11596 (KG), 2019 WL 4447541, at *8-9 (Bankr. D. Del. Sept. 16, 2019)

17

Up Transfers—show that Lewis's failure to consider restructuring alternatives was part of a broader corporate scheme that ultimately siphoned off the Companies' substantial value, and was then ratified and covered up by a conflicted Board of Managers. In other words, like the trustee's claims in *In re Our Alchemy*, Plaintiff's claims here "are beyond" a deepening insolvency claim that would otherwise protect "disinterested business decisions." *Id.*

Lewis next cherry-picks Subparagraphs (i), (ii), (iii), and (xi) of Count II to magically transform Count IV into a so-called *Caremark* claim in an attempt to pigeonhole plaintiffs into a failure "to properly supervise management" claim because, according to Lewis, this type of claim "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." (Doc. No. 21, at 18-19). Count IV, however, is *not* a claim based on the "failure to monitor" theory of liability discussed in *Caremark*, 698 A.2d 959. Instead, the allegations contained in Count IV and the Complaint more broadly pertain to Lewis's conscious disregard of, and willful participation in, the wrongdoing that was endemic to the Board of Managers' control over the Companies. The Complaint is replete with allegations that Lewis was well aware of the problems facing the Companies and consciously and at times willfully chose to ignore them, often to benefit his buddies on the Board of Managers.[20]  As such, in Count IV, the Complaint alleges a direct breach of fiduciary duty claim against Lewis arising from his own conscious misconduct, constituting multiple breaches of fiduciary duties owed to the Companies.  *See also In re SFBC Int'l, Inc. Sec. & Derivative Litig.*, 495 F. Supp. 2d 477, 484 (D.N.J. 2007) (noting that "[u]nlike other theories of director liability," a *Caremark* claim alleges "loss to the corporation resulting from an unconsidered failure of the board to act"); *In re Abbotts Labs. Derivative S'holders Litig.*,

---

[20] *See, e.g.*, Doc. No. 20. ¶¶ 54, 56, 57, 59, 60, 61, 62, 64, 71, 73, 74, 75, 90.

325 F.3d 795 (7th Cir. 2003) (facts are "exactly the opposite of *Caremark;* members of the board in Abbott were aware of the problems."); *White v. Panic*, 793 A.2d 356, 363 (Del. Ch. 2000).

In Section IV of the Motion, Lewis makes several "conclusory" arguments, essentially attacking specific allegations contained in subparagraphs of Paragraph 132 as "not stating a claim" and attempting to impose a heightened pleading standard not required under Rule 8 of the Federal Rules of Civil Procedure. Indeed, to Lewis, the following specific allegations contained in Count IV, which were supported by allegations contained in the Complaint that were incorporated into Count IV, do not themselves "state a claim": (A) "Plaintiff's . . . allegations that Defendant breached fiduciary duties by allowing the Companies' assets and enterprise value to continue to decrease in value also fail to state a claim"; and (B) "Plaintiff's allegation that Defendant breached his fiduciary duties by continuing or implementing a self-insurance program for employees, doctors, and patients at a time that the Companies were insolvent knowing that they were unable to cover the self-insured retention, resulting in claims against the Companies that should have been covered by insurance fails to state a claim." (Doc. No. 21 at 19-20). Rule 8 requires that the Complaint—not individual subparagraphs within allegations of a Complaint—contain a short, plain statement of the claim showing the pleader is entitled to relief.

Finally, Lewis's concluding argument that it "is implausible that these Companies had claims to recover assets of Holdco distributed by Holdco" is meritless when viewed against the allegations of the Complaint, which outline a clear effort by the Board of Managers to leverage the assets of the Companies for their own personal advantage and to the disadvantage of the Companies, and, at the same time, line their own pockets with proceeds of the Dividend Loan.

19

**E.    Lewis's Arguments, Not Plaintiffs' Counts, Are Premised On a Misreading of the Plain Language of the Second Restated Holdco LLC Agreement**

In Section V, Lewis assails Counts V through and including VIII of the Complaint by recycling a meritless argument: these Counts must fail because they are "premised on Cover-Up Transfers that did not occur—a release by Holdco of claims against Defendant." (Doc. No. 21 at 21-22). But, as this response has already demonstrated, this argument is premised on an outright falsehood and intentionally myopic view of the Complaint's allegations. The Complaint makes clear that Lewis and other members of the Board of Managers entered into the Second Restated Holdco LLC Agreement to, and in fact did (A) supersede the prior Restated Holdco LLC Agreement providing that its "Liability of Members of the Board of Managers" provision would not "affect the liability or duties of" Lewis and other members of the Board of Managers; (B) add language stating that "all fiduciary duties of any Manager to the Company . . . are hereby **eliminated**" to the "**maximum extent permitted by applicable law**"[21]; (C) remove any duty by Lewis and others to "give any consideration to any interest of or factors affecting" Holdco[22]; and, (D) obtain *ex post facto* ratification, approval, and consent to all actions taken prior to the effective date. (Doc. No. 20 ¶¶ 73-76).

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion. In the alternative, Plaintiff respectfully requests leave to amend his Complaint.

| | |
|---|---|
| GENOVESE JOBLOVE & BATTISTA, P.A. | ROCKE, McLEAN & SBAR, P.A. |
| *Counsel for the Plaintiff/Assignee* | *Co-Counsel for the Plaintiff/Assignee* |
| 100 Southeast Second Street, Suite 4400 | 2309 S. MacDill Avenue |
| Miami, Florida 33131 | Tampa, Florida 33629 |
| Tel: (305) 349-2300 | Tel: 813-769-5600 |
| Fax: (305) 349-2310 | Fax: 813-769-5601 |

---

[21] Second Restated Holdco LLC Agreement, § 3.6(d).
[22] *Id.* § 3.6(c).

By: /s/ Paul J. Battista, Esq.
    Paul J. Battista, Esq., FBN 884162
    pbattista@gjb-law.com
    Gregory M. Garno, Esq., FBN 087505
    ggarno@gjb-law.com

By: /s/ Robert L. Rocke, Esq.
    Robert L. Rocke, Esq., FBN 710342
    rrocke@rmslegal.com
    Jonathan B. Sbar, Esq., FBN 131016
    jsbar@rmslegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail using the Court's CM/ECF system on the 7th day of February, 2020, to:

Dennis P. Waggoner, Esq. (FBN 509426)
David L. Luikart, Esq. (FBN 21079)
Hill, Ward & Henderson, P.A.
P.O. Box 2231
Tampa, FL 33601
Phone: 813-221-3900
Fax:   813-221-2900
Email: dennis.waggoner@hwhlaw.com
Email: julie.mcdaniel@hwhlaw.com
Email: dave.luikart@hwhlaw.com
Attorneys for Defendant

Steven R. Wirth, Esq. (FBN 170380)
John L. Dicks, II, Esq. (FBN 89012)
Akerman LLP
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
Phone: 813-223-7333
Fax:   813-223-2837
Email: steven.wirth@akerman.com
Email: corinne.bylone@akersman.com
Email: john.dicks@akerman.com
Email: judy.barton@akerman.com
Attorneys for Defendant

/s/ Robert L. Rocke
Attorney

21