UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SONEET R. KAPILA,

     Plaintiff,

v.                                       CASE NO. 8:19-cv-1800-T-23TGW

JONATHAN LEWIS,

     Defendant.

_____/


## ORDER

     Confronted with financial distress and a foreseeable, catastrophic liability that later materialized, the former managers of Laser Spine Institute, LLC and the affiliated entities (collectively, LSI) allegedly (1) formed a Delaware holding entity, LSI Holdco LLC, to acquire LSI; (2) caused LSI's assets to serve as collateral for a $150 million loan to LSI; (3) distributed $110 million of the loan proceeds to the managers in exchange for each manager's interest in Holdco; and (4) amended Holdco's LLC agreement — according to the assignee — to ratify the distribution, to eliminate the managers' fiduciary duties, and to release Holdco's claims against the managers.

     The loan, the distribution, and the state-court judgment allegedly caused LSI to become insolvent and abruptly to cease operating.  In accord with Florida law, LSI appointed an assignee, Soneet R. Kapila, to pursue claims on behalf of LSI.  In

four removed actions, each of which the clerk-reassigned to me, the assignee sues a former manager of Holdco.[1]  In the original complaint in each action, the assignee asserted one count for breach of fiduciary duty.  After the former managers reportedly informed the assignee about Delaware's three-year limitation for breach of fiduciary duty, the assignee permissively amended the complaint to add seven counts.

## BACKGROUND

The amended complaint alleges the following facts, which are presumed true in resolving the motions to dismiss.  In 2005, LSI formed as an LLC under Florida law and opened a surgical facility in Tampa, Florida.  During the next few years, LSI formed wholly-owned subsidiaries that operated surgical facilities throughout the United States.  LSI eventually became a national spine-focused orthopedic chain that performed more than 100,000 procedures in five states and employed more than 600 persons.  By 2014, LSI had generated gross revenues exceeding $265 million.

In 2006, Laserscopic Spinal Centers of America sued LSI in the Thirteenth Judicial Circuit, Hillsborough County, Florida, and claimed that LSI had misappropriated Laserscopic's spinal surgery procedure, had poached Laserscopic's employees and patients, and had stolen Laserscopic's confidential information.  Following a bench trial in 2012, the circuit court held LSI liable and awarded

---

[1] No party has moved to consolidate the pending actions, and the benefits of consolidation appear not to outweigh the procedural confusion typically attending consolidation.

Laserscopic actual damages but declined to award disgorgement damages. Laserscopic appealed and demanded disgorgement damages — LSI's profits resulting from the misappropriation — exceeding $260 million.

Foreseeing the possibility of catastrophic liability if Laserscopic prevailed on appeal, the managers of LSI allegedly "concocted" a scheme to "loot" LSI's assets and to insulate the managers from liability. In December 2012, after Laserscopic appealed, the managers formed Holdco LLC under Delaware law, caused Holdco to become the sole member of LSI, and acquired membership interests in Holdco equivalent to the managers' membership interest in LSI. During the pendency of the state-court appeal, the managers of Holdco discovered deficiencies in LSI's financial reporting and in 2015 wrote down $34 million in receivables and established a $22.5 million reserve for bad debt. In July 2015, while the appeal pended, the managers of Holdco caused substantially all of LSI's assets to serve as collateral for a $150 million loan from Texas Capital Bank. After LSI received the loan proceeds, the managers of Holdco caused LSI to transfer $110 million to Holdco and caused Holdco to distribute the $110 million to the managers as a dividend in exchange for each manager's membership interest in Holdco.

After the dividend distribution, LSI's financial performance deteriorated and LSI rapidly became unable to satisfy the repayment obligations to Texas Capital Bank, which in 2016 issued notices of default on the loan. In November 2016, LSI and Texas Capital Bank entered a release agreement under which Texas Capital

Bank agreed not to "commence . . . any Action against any one or more Investors with respect to any claims arising out of or related to the [dividend distributions]." On the day of the release agreement, the managers of Holdco revised Holdco's LLC agreement. According to the assignee, this revision (1) eliminated the managers' fiduciary duties to Holdco, (2) ratified the dividend distribution, and (3) released any claim for breach of fiduciary duty. Two months later, in January 2017, the Second District Court of Appeal reversed-in-part the circuit court's judgment and instructed the circuit court to award Laserscopic disgorgement damages exceeding $260 million. In March 2019, LSI ceased business operations, and soon after LSI and Holdco — in accord with Florida law — authorized the assignee to pursue claims on behalf of LSI and Holdco.

In Count I, the assignee claims that by distributing the dividends the former managers of Holdco breached a fiduciary duty to LSI, Holdco's wholly-owned subsidiary. In Count II, the assignee claims that by distributing the dividends, the former managers of Holdco breached a fiduciary duty to Holdco. In Count III, the assignee claims that by amending Holdco's LLC agreement — purportedly to insulate themselves from liability — the former managers of Holdco breached a fiduciary duty to Holdco. In Count IV, the assignee claims a slew of other breaches of fiduciary duty on behalf of the fourteen LSI entities. In Counts V–VIII, the assignee claims avoidance and recovery under Florida's and Delaware's Uniform Fraudulent Transfer Acts.

- 4 -

## DISCUSSION

Although the conclusions of law in this order remain tentative because this order discusses complicated and apparently unresolved issues of Delaware corporate law (a regime rife with subtle distinctions and traps for the unwary or uninitiated), the assignee adequately alleges facts suggesting breach of fiduciary duty and permitting further development of the record.  But as the careful reader might infer from the subsequent discussion, the assignee confronts difficult, perhaps insurmountable, obstacles to prevailing on the merits.

### A.    Count I

In Count I, the assignee claims under Florida law that each member breached the fiduciary duty of loyalty to LSI (1) by causing LSI to enter the $150 million lending agreement and (2) by transferring the loan proceeds to Holdco for "no consideration and in furtherance of the [managers'] own self-interest."  Moving to dismiss, the managers argue that, because Holdco is a Delaware LLC and because under Delaware law a fiduciary of a parent owes no fiduciary duty to a wholly-owned subsidiary, the managers of Holdco owe no fiduciary duty to LSI.  *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 191 (Del. Ch. 2006) ("[A] subsidiary board is permitted to act to benefit its parent, not simply the subsidiary itself, for the obvious reason that wholly-owned subsidiaries are formed by parents to benefit the parents, and not for their own sake.")

Attempting to avoid *Trenwick*, the assignee relies on *In re USACafes, L.P. Litig.*, 600 A.2d 43 (Del. Ch. 1991), which recognizes that the fiduciary of a partnership's managing partner owes limited fiduciary duties to the partnership and the limited partners if the affiliate exerts "substantial control" over the partnership's assets. Other Delaware chancery decisions, such as *Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *9 (Del. Ch. 2009), extend these fiduciary duties to a fiduciary of an LLC's managing member.[2]  Accordingly, the assignee argues that under Delaware law the fiduciaries (here, the managers) of the managing member (here, Holdco) of the LLC (here, LSI) owe fiduciary duties to LSI because the managers exerted "substantial control" by causing substantially all of LSI's assets to serve as collateral for a $150 million loan, $110 million of which Holdco paid for each manager's membership interest in Holdco.

The assignee's argument misses the mark.  The limited fiduciary duties under *USACafes* arise only if the subsidiary has a minority shareholder.  *Trenwick*, 906 A.2d at 192 n.66 ("Although it is said in general terms that a parent corporation owes a fiduciary obligation to its subsidiaries, this obligation does not arise as such unless the subsidiary has minority stockholders"); *Gotham v. Hallwood Realty Pr's, L.P.*, 1998 WL 832631, *5 (Del. Ch. 1998) (noting that "the general partner . . . owes the limited partners fiduciary duties, not the management of the general partner, even

_____

[2] In *Bay Center*, however, the "defendants [did] not challenge the general applicability of [the *USACafes*] doctrine in the LLC context.")

- 6 -

though they make the decisions for that business entity.")  In each decision cited by the assignee, a fiduciary of the parent allegedly exploited the subsidiary at the expense of a minority shareholder of the subsidiary.  The assignee cites no Delaware decision holding that a wholly-owned subsidiary can sue a parent's fiduciary for breach of a fiduciary duty, and *Trenwick* holds the opposite.  *Trenwick*, 906 A.2d at 194 (holding that "if there was a breach of fiduciary duty by conduct [of the parent's directors], the proper defendant is the parent itself, as the parent corporation, not the directors of [the parent].")

Because the assignee alleges no facts suggesting that the LSI subsidiary has a shareholder other than Holdco (in fact, the assignee alleges that Holdco is "the sole member and owner of LSI") or that the assignee has standing to pursue a claim on behalf of a minority shareholder of LSI, Count I fails to state a claim.[3]

### B.    Count II

In Count II, the assignee claims under Delaware law that the managers breached the fiduciary duty of loyalty to Holdco by distributing $110 million to the

---

[3] Although not cited by the parties, *In re TOUSA, Inc.*, 437 B.R. 447 (Bankr. S.D. Fla. 2010), applies Delaware law and *USACafes* to hold that the directors of a parent owe fiduciary duties to the creditors of an insolvent subsidiary wholly owned by the parent if the directors of the parent caused the subsidiary's insolvency. Although the assignee alleges that the managers of Holdco caused LSI's insolvency and damaged LSI's creditors, Count I alleges that the managers breached fiduciary duties to LSI — not to a creditor. Also, *TOUSA* appears inapplicable because under the Delaware LLC Act a creditor of an LLC cannot assert a derivative action on behalf of the LLC. *CML V, LLC v. Bax*, 6 A.3d 238, 239 (Del. Ch. 2010); *see also* R. Silberglied & B. Rohrbacher, TOUSA, USACafes, *and the Fiduciary Duties of a Parent's Directors upon a Subsidiary's Insolvency*, NORTON ANNUAL SURVEY OF BANKRUPTCY LAW 33 (an article from which the assignee apparently quotes without attribution).

managers despite the financial precariousness of Holdco and despite foreseeable, catastrophic liability in state court.  Moving to dismiss, each manager argues that the three-year limitation under Chapter 10, Section 8106, Delaware Code, bars the claim because the distribution occurred in July 2015, but the assignee began the first action against a director in June 2019, more than three years later.  (Doc. 20 at ¶¶ 44, 47)

In response, the assignee attempts to invoke equitable tolling of the statutory limitation.  Under Delaware law, a claim of self-dealing against a fiduciary is tolled even in the absence of evidence that the fiduciary concealed the self-dealing.  *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008).  But equitable tolling persists "only until the plaintiff is on inquiry notice of their cause of action."  *Microsoft Corp. v. Amphus, Inc.*, 2013 WL 5899003, at *17 (Del. Ch. 2013).  Delaware law imposes inquiry notice if the plaintiff has "sufficient knowledge to raise their suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued would lead to discovery of the injury."  *Pomeranz v. Museum P'rs, P.P.*, 2005 WL 217039, at *3 (Del. Ch. 2005).  The assignee argues that, because each manager of Holdco allegedly breached the fiduciary duty of loyalty by approving the dividend distribution, "Holdco . . . did not have any reason to know" about the alleged breach of fiduciary duty until the assignee "was granted control of [LSI and Holdco]" and discovered the allegedly conflicted distribution.  (Doc. 22 at 11)

- 8 -

The assignee's response to the motion to dismiss remains agnostic about whether Holdco's receiving inquiry notice or the assignee's receiving inquiry notice halts the equitable tolling.  The assignee cites *Microsoft Corp.*, which suggests that this issue remains unresolved under Delaware law.  *Microsoft Corp.*, 2013 WL 5899003, at *18–19, n.9 (finding "intuitively appealing" the argument that "a shareholder's right to assert a cause of action derivatively on behalf of a corporation should be no greater than the corporation's right to pursue the claim directly" but collecting Delaware decisions that focus on the time the derivative plaintiff — not the corporation — had inquiry notice about the breach of fiduciary duty).

But even if the application of equitable tolling depends on Holdco's receiving inquiry notice and not the assignee's receiving inquiry notice, the assignee alleges a plausible — but not conclusive — basis to invoke equitable tolling.  Specifically, the assignee alleges that Holdco lacked inquiry notice about the conflicted distribution because the knowledge of a conflicted fiduciary "is not imputed to the corporation for purposes of holding those fiduciaries liable for the harm they caused to the corporation."  *In re Am. Intern. Grp., Inc.*, 965 A.2d 763, 803 (Del. Ch. 2009). Because "each and every fiduciary" of Holdco allegedly engaged in self-dealing (by authorizing the dividend distribution) at the expense of Holdco, Count II plausibly alleges that Holdco lacked inquiry notice about the alleged breach of fiduciary duty and plausibly alleges a basis to invoke equitable tolling.

**C.     Count III**

In Count III, the assignee claims under Delaware law that each manager breached a fiduciary duty to Holdco by "fail[ing] to pursue the claims . . . to recover" the dividend distribution and by revising Holdco's LLC agreement after the dividend distribution (1) to eliminate retroactively the managers' fiduciary duties, (2) to ratify the dividend distribution, and (3) to release Holdco's claims against the managers.[4]

Moving to dismiss, the managers argue that Delaware law permits an LLC to eliminate prospectively a manager's fiduciary duties, *AM Gen. Holdings LLC v. The Renco Grp., Inc., C.A.*, 2016 WL 4440476, at *15 (Del. Ch. 2016), and that the revision to the LLC agreement contains no suggestion that the managers intended to eliminate retroactively a fiduciary duty.  *AgroFresh, Inc. v. MirTech, Inc.*, 257 F.Supp.3d 643, 661 (D. Del. 2017) ("Where there is not an earlier effective date and the intent to make an agreement retroactive is not clear on the face of the contract, courts decline to hold modifications retroactive.")  And because the revision to the LLC agreement does not eliminate retroactively the managers' fiduciary duties, the managers argue that no alleged facts plausibly suggest an attempt by the managers to insulate themselves from liability resulting from the alleged self-dealing.  Rather, the managers argue that the assignee urges a strained interpretation of the revised LLC

---

[4] Count III strikes the reader as an insurance against a possible dismissal of Count II as time barred. In other words, Count III asserts that, even if the allegedly conflicted distribution occurred outside the limitation period, the managers nonetheless breached the fiduciary duty of loyalty by attempting to insulate themselves from liability resulting from the allegedly conflicted distribution, which attempt at insulation occurred within the applicable limitation.

agreement to contrive a breach of fiduciary duty (the attempt at insulation from liability) occurring within the limitation.

In response, the assignee argues that the managers ignore other revisions to the LLC agreement in which the managers (according to the assignee) released Holdco's claims against the managers and ratified the allegedly conflicted distribution.  In other words, the assignee argues that even if the revision to the LLC agreement eliminated only prospective breaches of fiduciary duty, the cumulative effect of these other revisions insulates the managers from liability resulting from the allegedly conflicted distribution.

The managers have the better argument.  First, the revision to eliminate fiduciary duties, Section 3.6(d) of the LLC agreement, states that "all fiduciary duties of any Manager . . . are hereby eliminated . . . to the maximum extent permitted by applicable law."  This elimination revision contains no suggestion "on the face of the contract" to eliminate retroactively a fiduciary duty.  *AgroFresh, Inc.*, 257 F.Supp.3d at 661.  Because the elimination revision contains no suggestion of retroactive application, the elimination revision does not — as the assignee maintains — eliminate a breach of fiduciary duty occurring before the revision.

Second, the revised LLC agreement releases claims "by each member . . . against the present and former Members" and "by each Member . . . against the Company."  Although the release revision releases the members' claims against each other and against Holdco, the release revision does not — as the assignee maintains

- 11 -

— release Holdco's claims against the managers.  Accordingly, the release revision evidences no attempt by the managers to insulate themselves from liability resulting from the allegedly conflicted distribution.

Third, the ratification revision cited by the assignee states that "each member hereby . . . ratifies, approves, and consents to all actions taken on or prior to the date hereof by each manager . . . ."  Although each member ratifies the transaction, the ratification revision causes the managers — not Holdco — to ratify the dividend distribution.  Regardless, the assignee cites no Delaware law showing that an entity cannot void a conflicted ratification or that a conflicted ratification otherwise bars the entity from pursuing claims against a conflicted director.

Under a plain reading of the revised LLC agreement, no provision cited by the assignee releases Holdco's claims against the managers, eliminates retroactively the managers' fiduciary duties, or otherwise insulates the managers from any claim against the managers.  A conclusive determination, however, remains premature on this motion to dismiss.  If on summary judgment the assignee presents a factual record to invoke the equitable tolling of Count II (the claim that the dividend distribution breached the duty of loyalty under Delaware law), the revised LLC agreement — under the managers' interpretation urged in the motion to dismiss and the reply — constitutes no impediment to the assignee's pursuing Count II.  But if on summary judgment the assignee fails to present a factual record to invoke the equitable tolling of Count II, any impediment in the revised LLC agreement to the

assignee's pursuing Count II becomes irrelevant both because the purportedly released claims are barred by the applicable limitation and because the assignee neither alleges facts nor cites Delaware law suggesting that the conflicted release of a time-barred claim entitles Holdco to damages.  Although the managers have the better interpretation of the LLC agreement, this order reserves determination until summary judgment and the presentation of a developed factual record.

### D.    Count IV

In Count IV, the assignee alleges that the managers of Holdco breached under Florida law a fiduciary duty to each of the fourteen LSI entities by committing "wrongful acts" other than the acts underlying Counts I–III.  In a paragraph spanning a page and a half of the amended complaint, the assignee lists in conclusory fashion fifteen alleged breaches of fiduciary duty and asserts these claims on behalf of fourteen entities.[5]  Moving to dismiss Count IV, the managers argue

---

[5] In full, that paragraph states, "Without limitation, Defendant breached his fiduciary duties, including the duty of loyalty, care and good faith, by committing the Wrongful Acts as detailed above and by (i) failing to implement or follow, or to otherwise cause the implementation and following of, adequate safeguards or controls in regard to financial reporting; (ii) failing to implement or follow, or to otherwise cause the implementation and following of adequate safeguards and controls in regard to material business, operational, and regulatory functions; (iii) while the Companies were insolvent or not paying their debts as they became due, failing to undertake sufficient and adequate measures to ensure that payments to third parties did not constitute preferential or fraudulent transfers which regard could result in a loss of assets of the Companies; (iv) while the Companies were insolvent or not paying its debts as they became due, causing or otherwise abdicating his duties by allowing the Companies' assets and enterprise value to continue

(continued…)

persuasively that Count IV contravenes Rule 8, Federal Rules of Civil Procedure, (1) by failing to fairly notify the managers about the facts on which the assignee relies to support each count, (2) by failing to allege facts supporting each element of these fifteen conceptually distinct claims, (3) by asserting breaches of fiduciary duty redundant of Counts I–III, and (4) by claiming under Florida law the breach of a fiduciary owed to entities formed in a state other than Florida.  The managers observation rings true that "[t]he universe of facts that could even conceivably support the breaches discussed in [paragraph 132] is ill-defined, but in any event considerably smaller than the facts generally alleged in Plaintiff's Amended Complaint."  Count IV, a "laundry list" of Delaware corporate law buzzwords, warrants dismissal for failure to comply with Rule 8, Federal Rules of Civil Procedure.

---

to decrease in value; (v) while the Companies were insolvent or not paying their debts as they became due, failing to cause the Companies to file insolvency proceedings as soon as reasonably practical, necessary or appropriate; (vi) failing to ensure that the Companies were not engaging in or otherwise permitting corporate waste; (vii) permitting the Companies to engage in corporate waste; (viii) permitting the Companies to engage in certain preferential or fraudulent transfers, which resulted in a loss of assets of the Companies; (ix) permitting the Companies' assets and enterprise value to decrease in value; (x) failing to fully or adequately inform himself in regard to material business, operational, regulatory or financial decisions affecting the Companies; (xi) failing to cause to implement or follow adequate safeguards and controls, including WARN Act compliance; (xii) the continuation or implementation of self-insurance programs for employees, health insurance and malpractice insurance at a time that the Companies were insolvent knowing that the Companies were unable to cover their self-insured retention or pay medical bills, leaving those individuals without any health or malpractice coverage when the Companies closed, resulting in claims against the Companies that should have been covered by insurance; (xiii) failing to pursue claims and causes of action to recover the Dividend Distributions, which constituted not only fraudulent transfers but also a violation of applicable law at the time; (xiv) concocting a scheme to insulate himself from liability through a series of restructuring and assignment transactions; and (xv) other breaches and proximately caused damages as may be ascertained through discovery." (Doc. 20 at ¶ 132)

**E.     Counts V–VIII**

Suing for declaratory relief and suing under Florida's and Delaware's Uniform Fraudulent Transfer Acts, the assignee in Counts V–VIII claims avoidance and recovery of the "Cover-Up Transfers," which the amended complaint defines as the managers' attempts to insulate themselves from liability resulting from the dividend distribution.  Moving to dismiss, the managers argue that the assignee's allegations bely the contention that the managers attempted to insulate themselves from liability.  However, as explained above in the discussion of Count III, resolution of this argument is better reserved until summary judgment and the presentation of a more developed record.

## CONCLUSION

The motion (Doc. 21) to dismiss is **GRANTED-IN-PART**, and Counts I and IV are **DISMISSED**.  No later than **JULY 31, 2020**, the assignee may amend the complaint.

ORDERED in Tampa, Florida, on July 17, 2020.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 15 -